IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1012-03






JACKIE RUSSELL KEETER, Appellant



v.



THE STATE OF TEXAS





ON STATE'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


HAMILTON COUNTY





 Holcomb, J., filed a dissenting opinion, in which Johnson, J., joined..


 


 A jury found appellant guilty of indecency with a child, found the enhancement
paragraphs true, and assessed punishment at imprisonment for life and a $10,000 fine. On
direct appeal, appellant argued that the trial court erred in denying his motion for new trial
because (a) the complaining witness recanted her testimony shortly after trial on the merits
and (b) the State did not disclose exculpatory evidence relating to that recantation. The
Tenth Court of Appeals reversed, holding that the trial court abused its discretion because
the recantation was credible. A majority of this Court reversed the judgment of the court of
appeals and remanded the case to that court for resolution of appellant's Brady claim. (1) I
dissented to the reversal, because, in my opinion, the court of appeals correctly concluded
that the trial court abused its discretion in not granting the motion for new trial due to the
newly discovered, material recantation evidence. On remand, the Tenth Court of Appeals
again reversed the judgment of the trial court, holding that the State withheld material
impeachment evidence. Today, the majority again reverses the judgment of the court of
appeals. Because the record evidence clearly supports the court of appeals' holding that the
State withheld material evidence, I again dissent. 

 I strongly disagree that appellant did not preserve error of his Brady claim. Texas
Rule of Appellate Procedure 21.1 provides that a motion for new trial is a prerequisite to
presenting a point of error on appeal when necessary to adduce facts not in the record. At
the hearing on the motion for new trial, appellant adduced facts that Brady evidence was
conveyed to the State and that Brady material was never conveyed to the defense. See
Harvey v. State, 201 S.W.2d 42, 45 (Tex. Crim. App. 1947) (op. on rehr'g) (appellant must
provide reasonable notice to the trial judge and the State of errors that occurred or arose
outside the trial proper). In appellant's first amended motion for new trial, he asserted that
"Evidence establishing the defendant's innocence was withheld by a material prosecution
witness." A first-year law student would recognize this to be a claim that Brady material was
not turned over to the defense prior to trial. See id. (finding appellant did not preserve error
of jury misconduct complaint because the motion for new trial contained no allegation that
jury misconduct occurred); see also Tex. R. App. P. 21.3(e) (containing similar language). 
But more importantly, there is no doubt that the parties and the trial judge fully understood
that a Brady claim was being litigated. (2) Indeed, the State even filed a letter in the appellate
court in which specific references to Brady were made and arguing that the State is not
required to turn over "evidence that is available equally to the defense and the prosecution"
and "defendants must bear the responsibility for their failure to diligently seek its discovery." 
We have held that "No technical considerations or form of words" are required to preserve
error for review. Lankston v. State, 827 S.W.2d 907 (Tex. Crim. App. 1992) (straightforward
communication in plain English will suffice if it lets the trial judge know what the party
wants and why he thinks himself entitled to it); see also Cofield v. State, 891 S.W.2d 952,
954 (Tex. Crim. App. 1994) ("Identifying challenged evidence as hearsay should generally
be regarded as sufficiently specific objection."). We have held also that the State may not
complain on appeal about the adequacy of a motion for new trial unless it lodged a complaint
in the trial court. State v. Gonzalez, 855 S.W.2d 692, 694-95 (Tex. Crim. App. 1993). The
State did not complain orally or by written motion that appellant's Brady claim was
inadequate. See id. 

 It is clear that appellant preserved error. Tex. R. App. P. 33.1(a)(1)(A) (to preserve
error on appeal, party must object with sufficient specificity to make the trial court aware of
the complaint). The fact that appellant did not cite to Brady in his written motion for new
trial or say the words Brady v. Maryland at the hearing, should not override the fact that the
specific grounds of his motion were apparent from the context and both parties vigorously
litigated the Brady claim. See Gallups v. State, 151 S.W.3d 196, 198 n.1 (Tex. Crim. App.
2004) (holding that appellant preserved error of state law claim under Tex. Code Crim.
Proc. Ann. art. 14.05(1), even though he did not mention art. 14.05 in his motion to
suppress); Tex. R. App. P. 33.1 (a)(1)(A). The majority's holding that appellant did not
preserve error of his Brady claim will effectively overrule a long line of cases from this Court
and engraft a greater burden onto Tex. R. App. P. 33.1 (a)(1)(A). (3) 

 Because the majority holds that appellant did not preserve error, it does not examine
whether Brady evidence was conveyed and withheld or whether the evidence was "material"
for purposes of a Brady claim. I would hold that the court of appeals did not err in
concluding that Brady evidence was conveyed and withheld and that the evidence was
material. Keeter v. State, 105 S.W.3d 137, 146-47 (Tex. App.--Waco 2003).

 As the majority opinion explains, the complaining witness' father and step-mother
both testified at the hearing on motion for new trial that they told the State before trial that,
for a variety of reasons, they did not believe the complainant's accusations. (4) The prosecutor
to whom this Brady material was allegedly relayed was at the hearing on the motion for new
trial, but he did not controvert the two witnesses' assertions. (5) Additionally, the prosecutor,
through his cross-examination of the witnesses, did not challenge that the evidence was
relayed to him before trial. Rather, the prosecutor cross-examined the witnesses about when
the information was relayed (whether it was one month before trial, three months before trial,
or "last year"), whether the father and step-mother's beliefs about appellant's innocence was
consistent and continuous, and whether there were other opportunities before trial to reassert
their beliefs to the State that the complainant was lying. (6) Thus, because the State did not
challenge the allegations that Brady material was conveyed, I would hold that, even under
a deferential review of the trial court's ruling, (7)
 the trial court abused its discretion in denying
appellant's motion for new trial. See Banks v. Dretke, 540 U.S. 668, 675-76 (2004) ("When
police or prosecutors conceal significant exculpatory or impeaching material in the State's
possession, it is ordinarily incumbent on the State to set the record straight."); see also Tex.
Code Crim. Proc. Ann. art. 201 ("It shall be the primary duty of the of all prosecuting
attorneys . . . not to convict, but to see that justice is done. They shall not suppress facts or
secret witnesses capable of establishing the innocence of the accused.") (emphasis added). 
 Evidence is "material" if there is a reasonable probability that, had the evidence been
disclosed to the defense, the result of the proceeding would have been different. Kyles v.
Whitley, 514 U.S. 419, 434 (1995); United States v. Bagley, 473 U.S. 667, 676 (1986);
Thompson v. State, 841 S.W.2d 399, 404 (1992). A "reasonable probability" is a probability
sufficient to undermine confidence in the outcome. Bagley, 473 U.S. at 682. Brady evidence
includes impeachment evidence as well as exculpatory evidence. See id. at 676. 

 I agree with the court of appeals that the evidence in question was material
impeachment evidence because "Travis's and Rhonda's testimony had, by far, the highest
potential to discredit [complainant's allegations]." Keeter v. State, 105 S.W.3d at 146. Had
appellant been apprised of the witness' beliefs, the result of the proceeding might well have
been different. See Ex parte Richardson, 70 S.W.3d 865, 871 (Tex. Crim. App. 2002). 

 First , the father and the step-mother had no motive to testify against the complainant
in a prosecution of a non-relative charged with molestation. Likewise, that a father would
have testified in favor of a man accused of molesting his daughter would have been powerful
evidence to the jury. And, evidence that a father, who had no ties to the defendant, would
claim that the District Attorney had the wrong man is equally compelling evidence. Second,
because the complainant had lived with the father and step-mother for almost a year prior to
the trial, they had personal knowledge of the complainant's propensity to lie, which surely
would have been admitted upon cross-examination. See Keeter, 105 S.W.3d at 147 (noting
that the witness' testimony would be admissible under rules of evidence 608 and 613). In
sum, a parent and step-parent would not testify favorably for an accused person charged with
molesting their daughter, if those persons, with personal knowledge of the complainant's
behavior, did not believe that the accused was innocent. 

 Thus, because in my view, the State withheld material impeachment and exculpatory
evidence, I would hold that the jury's verdict is not worthy of confidence. See Kyles v.
Whitley, 514 U.S. at 434; Bagley, 473 U.S. at 682; Cook v. State, 940 S.W.2d 623, 627 (Tex.
Crim. App. 1997). Because the trial court had clear notice that a Brady claim was being
litigated, and the record evidence clearly supports the court of appeals' conclusion that
material Brady evidence was withheld, I dissent.

DELIVERED: April 6, 2005.

PUBLISH

 
1. Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "the suppression by the
prosecution of evidence favorable to an accused upon request violates due process where the
evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of
the prosecution.").
2. In further support of its holding that appellant did not preserve for review his Brady
claim, the majority points to the trial court's order denying the motion for new trial. See ante,
slip op. at 9 ("Also, the trial court's order denying the motion does not mention a Brady claim."). 
Our rules of appellate procedure, however, instruct that a trial court "must not summarize,
discuss, or comment on evidence" in its ruling on a motion for new trial. Tex. R. App. P. 21.8
(b). It is rather disingenuous of the Court to look to the trial court's order, which improperly
discusses and comments on the evidence, to support its conclusion that "appellant did not raise a
separate claim related to Brady." 
3. Because the record clearly reflects that appellant's Brady claim was preserved for
review, I express no opinion upon the court of appeals' reasoning that Brady claims are
unwaivable rights under Marin. v. State. 851 S.W.2d 275, 278-79 (Tex. Crim. App. 1993)
(recognizing three categories of rights--(1) absolute requirements and prohibitions (unwaivable
rights), (2) rights which must be implemented unless expressly waived, and (3) rights which are
implemented upon request).
4. The complainant's father testified he told the District Attorney at least four months
before trial that he did not believe his daughter and that the District Attorney was "accusing the
wrong man." The step-mother testified that she told an assistant district attorney that she did not
believe her step-daughter quite a while before trial. Specifically, she testified that she conveyed
to the State her beliefs that complainant was lying "the first time we were to come down here and
talk about the trial that we met with him so he could talk to [complainant]. I don't remember
when it was, last year." 
5. If the prosecutor disputed the witnesses' assertions that Brady information had been
relayed, he should have asked to be sworn and then testified to the contrary, or otherwise
disputed the witness' assertions in open court as an officer of the court, i.e.--that the Brady
information had not been conveyed to him prior to trial. The prosecutor could have readily
controverted the facts alleged by the father and the step-mother. Because he did not, I would
hold that the court of appeals did not err in reversing the trial court's implicit finding that Brady
information was withheld. See Charles v. State, 146 S.W.3d 204, 210 (Tex. Crim. App. 2004)
(citing to rule of civil procedure 166a (c) which provides that "summary judgment may be based
on uncontroverted testimonial evidence of an interested witness . . .if the evidence is clear,
positive and direct, otherwise credible and free from contradictions and inconsistencies, and
could have been readily controverted); see also, Brady, 373 U.S. at 87 ("Society wins not only
when the guilty are convicted but when criminal trials are fair; our system of the administration
of justice suffers when any accused is treated unfairly."). 
6. Upon cross-examination of trial counsel, who had called herself as a witness to testify
that the State never told her about the witness' doubts, the prosecutor asked, "If it didn't occur it
wouldn't be disclosed; isn't that true?" This general question is not the equivalent of sworn
testimony that the witnesses did not express their beliefs to the prosecutor before trial that the
complainant was lying. See Banks v. Dretke, 540 U.S. 668, 675 (2004) (finding significant to
prosecutorial misconduct claim on habeas review that the prosecutor did not correct informant's
untruthful testimony in open court when informant lied on the stand). The majority summarily
concludes that the prosecutor did not know that appellant was making a Brady claim at the
motion for new trial. See ante, slip op. at 9 ("Had the prosecutor been aware that the appellant
was making a Brady claim, he could have testified to deny the allegation."). However, if the
prosecutor did not know that a Brady claim was being made, there would be no reason for him to
have asked defense counsel whether the Brady material had been conveyed at all. 
7. Charles v. State, 146 S.W.3d at 210.